Matter of Raivyn BB. (Courtney BB.) (2025 NY Slip Op 06564)

Matter of Raivyn BB. (Courtney BB.)

2025 NY Slip Op 06564

Decided on November 26, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 26, 2025

CV-23-1986 CV-23-2001
[*1]In the Matter of Raivyn BB., Alleged to be a Neglected Child. Tompkins County Department of Social Services, Respondent; Courtney BB., Appellant. (Proceeding No. 1.)
In the Matter of Raivyn BB., Alleged to be a Neglected Child. Tompkins County Department of Social Services, Respondent; Kip AA., Appellant. (Proceeding No. 2.)

Calendar Date:October 8, 2025

Before:Clark, J.P., Aarons, Pritzker, Reynolds Fitzgerald and McShan, JJ.

Lisa K. Miller, McGraw, for Courtney BB., appellant.
Michelle I. Rosien, Philmont, for Kip AA., appellant.
Tompkins County Department of Social Services, Ithaca (Max R. Brown of counsel), for respondent.
Thomas G. Shannan, Ithaca, attorney for the child.

Pritzker, J.
Appeals from two orders of the Family Court of Tompkins County (John Rowley, J.), entered September 21, 2023, which granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.
Respondent Kip AA. (hereinafter the father) and respondent Courtney BB. (hereinafter the mother) are the parents of the subject child (born in 2022). After a hotline report was made following the child testing positive for methamphetamines, petitioner filed for removal, and a temporary removal order was entered against the mother. A neglect petition against the mother followed. Once paternity was established, petitioner filed a neglect petition against the father. The neglect petitions proceeded to fact-finding, after which Family Court found that both the mother and the father neglected the child. After a dispositional hearing, the child's placement with petitioner was continued and both the mother and the father were placed under an order of supervision that imposed requirements for engagement in services. The mother and the father appeal.
At the outset, the father argues that reversal is required because Tompkins County was an improper venue as both parents resided in Cortland County. However, the father waived this argument by not requesting that Family Court transfer the proceedings (see generally Matter of Sean W. [Brittany W.], 87 AD3d 1318, 1320 [4th Dept 2011], lv denied 18 NY3d 802 [2011]; Matter of Brayanna G., 66 AD3d 1375, 1376 [4th Dept 2009], lv denied 13 NY3d 714 [2010]; compare Matter of Gabriella UU. [Kelly VV.], 83 AD3d 1306, 1307 [3d Dept 2011]).
As to the merits, we agree with the mother that the finding of neglect against her was not proven by a preponderance of the evidence. "Family Court Act § 1012 (f) is explicit in identifying the elements that must be shown to support a finding of neglect. As relevant here, it defines a neglected child to mean: a child less than [18] years of age . . . whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his [or her] parent . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship . . . by misusing a drug or drugs" (Nicholson v Scoppetta, 3 NY3d 357, 368 [2004] [internal quotation marks omitted]; see Matter of Winter II. [Kerriann II.], 227 AD3d 1142, 1144 [3d Dept 2024], lv denied 42 NY3d 903 [2024]). "A report which shows only a positive toxicology for a controlled substance generally does not in and of itself prove that a child has been physically, mentally or emotionally impaired, or is in imminent danger of being impaired. Relying solely on a positive toxicology result for a neglect determination fails to make the necessary causative connection to all the surrounding circumstances that may or may not produce impairment or imminent risk of impairment in the newborn child" (Matter of Nassau [*2]County Dept. of Social Servs. v Denise J., 87 NY2d 73, 79 [1995]; see Matter of Winter II. [Kerriann II.], 227 AD3d at 1145).
Testimony and evidence at the fact-finding hearing demonstrated that, after the child's birth, urine screens for the child and the mother were positive for amphetamines and Subutex. This test result was later confirmed by a test of the child's meconium, which was positive for amphetamines and methamphetamines. A child protective services worker for petitioner testified that, as relevant here, the mother informed the nurse that she used Subutex pursuant to a prescription while she was pregnant and used "ICE" — a methamphetamine — one time during her pregnancy.[FN1] In finding that the child had been neglected by the mother, Family Court referenced the positive toxicology results and the mother's admission to having used "ICE." The court also referenced that the child was born with a "low birth weight consistent with experiencing in utero drug exposure." While the hospital records confirm the child was "small for gestational age," there was no testimony linking this to the mother's use of amphetamines/methamphetamines during pregnancy. The court also cited to the child exhibiting "telltale signs of drug exposure, exhibiting increased tremors when disturbed, high pitch crying and a need for extra comforting." There was testimony from a registered nurse who cared for the child that the child had withdrawal symptoms, such as a "high-pitched, shrill cry" and "constantly need[ing] to be held and have human touch." However, there was no testimony as to whether the child's small birth weight and withdrawal symptoms were related to the mother's methamphetamine use, rather than her use of Subutex, which her unrefuted testimony demonstrates was prescribed by a doctor.[FN2] In fact, the mother testified that, during her pregnancy, medical professionals informed her that using Subutex would be fine for the child, that there would not be any side effects, but there may be "some withdrawals."
Given the foregoing, we do not find that the neglect finding against the mother is supported by a sound and substantial basis in the record as to "the necessary causative connection" between the positive toxicology result and any impairment or imminent risk of impairment of the child (Matter of Nassau County Dept of Social Servs. v Denise J., 87 NY2d at 79; compare Matter of Winter II. [Kerriann II.], 227 AD3d at 1145). In fact, taken as a whole, the child's medical records reveal that, despite her small gestational age, she was born full term, and while she was monitored for withdrawal symptoms based upon the positive toxicology result and the mother's use of Subutex, this monitoring occurred in the nursery, rather than in a specialized unit, and, after the necessary five-day observation period, she was discharged to the foster parents with nothing other than routine follow up required (compare Matter of Nassau County Dept of Social Servs. v Denise J., 87 [*3]NY2d at 79; Matter of Winter II. [Kerriann II.], 227 AD3d at 1145). Accordingly, the neglect finding against the mother must be reversed.
We reach the same result regarding the father's neglect finding, which was based upon the father's behavior toward petitioner's staff, as well as hospital staff, which was "hostile beyond what would be deemed acceptable by a reasonable and prudent standard." The finding was also based upon the father's refusal to sign a birth certificate or acknowledgement of paternity, "effectively abandoning the child when the mother was deemed to be an unsafe caregiver." There is no support in the law that either of these behaviors constitute neglect, nor did petitioner "demonstrate that [the child's] physical, mental or emotional condition was in imminent danger of being impaired" based upon these behaviors (Matter of Micah S. [Rogerio S.], 206 AD3d 1086, 1089 [3d Dept 2022]). And finally, Family Court imputed the father with knowledge of the mother's drug use and found that he neglected the child "by failing to exercise a minimum degree of care to prevent the mother from abusing drugs during her pregnancy." This statement exaggerates what the testimony revealed was the extent of the mother's drug use during pregnancy, and there simply was no evidence regarding the father's knowledge of her use (compare Matter of Niviya K. [Alfonzo M.], 89 AD3d 1027, 1028 [2d Dept 2011]). Accordingly, "petitioner failed to prove by a preponderance of the evidence that [the father] failed to exercise a minimum degree of care required of a reasonable and prudent parent" (Matter of Leo RR. [Joshua RR.], 213 AD3d 1190, 1192 [3d Dept 2023]); thus, the finding of neglect as to the father must also be reversed. We need not address either of the parties' remaining arguments as they have been rendered academic by our determination.
Clark, J.P., Aarons, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the orders are reversed, on the law and the facts, without costs, and petitions dismissed.

Footnotes

Footnote 1: In its decision, Family Court referred to "recent and past drug exposure." This is presumably based upon a labor and delivery registered nurse's testimony, in response to a question as to how far back urine tests look for drug use, that "[t]he urinalysis is relatively recent. However, the meconium usually goes back a couple [of] months." We do not find that this testimony in and of itself specifically establishes multiple instances of use.

Footnote 2: Family Court also noted that the mother "claimed to be prescribed Subutex, [but] she provided no credible evidence of a prescription." This reference is not entirely accurate as her testimony that she was prescribed this medication was not disputed and the medical records reference Subutex as a prescribed medication.